UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

------------------------------x

| | |
|---|---|
| GALOIS, INC., | Civil Action No.: |
| Plaintiff, | |
| versus | 1:22-cv-166 |
| SP GLOBAL, INC., et al., | April 28, 2022 |
| Defendants. | |

------------------------------x

# TRANSCRIPT OF JURY MOTION HEARING
BEFORE THE HONORABLE PATRICIA T. GILES
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S

FOR THE PLAINTIFF:
LINDSEY E. DUNN, Esq.
Perkins Cole LLP
1900 Sixteenth Street
Suite 1400
Denver, CO 80202

JOHN K. ROCHE, Esq.
Perkins Coie LLP
700 13th St NW
Suite 600
Washington, DC 20005-3690

FOR THE DEFENDANTS:
JOHN D. FOLDS, Esq.
Baker Donelson Bearman Caldwell &
Berkowitz PC (DC)
901 K St NW
Suite 900
Washington, DC 20001

OFFICIAL U.S. COURT REPORTER:
MS. TONIA M. HARRIS, RPR
United States District Court
401 Courthouse Square
Fifth Floor
Alexandria, VA 22314

**P R O C E E D I N G**

(Court proceedings commenced at 10:04 a.m.)

THE DEPUTY CLERK: Civil Action 22-166. Galois, Inc. versus SP Global, Inc., et al.

Counsel, please note your appearances for the record.

MR. ROCHE: Good morning, Your Honor. John Roche on behalf of the plaintiff, Galois, Inc. I have with me my colleague, Lindsey Dunn, who's been admitted pro hac vice. With Your Honor's permission, I will hand her the argument today.

THE COURT: Good morning. That's fine.

MR. FOLDS: Good morning, Your Honor. David Folds on behalf of SP Global.

THE COURT: Good morning. I think we're on the defendant's motion to dismiss.

MR. FOLDS: Thank you, Your Honor. David Folds for the defendants.

The plaintiff in this case have a contract with SP Global Institute or SPGI. The plaintiff, Galois, which is a subcontractor for SPGI under a contract that SPGI had with the Air Force is alleged in the complaint. SPGI did not pay all amounts due, plaintiff obtained an arbitration award for the amounts due, and the arbitration award was confirmed by a state court in Ohio.

Now, the plaintiffs have brought this action asserting various tort claims against SP Global, Inc., an affiliate of SPGI, and Dr. Tolley and Mr. Burns, who were officers of both companies.

We submit the plaintiff has failed to state a claim on any of these tort claims and that the complaint should be dismissed. Now, I -- based on my experience, I expect the Court is familiar with the complaint and with the arguments and the motions, so I'll only touch on the highlights for my presentation today.

THE COURT: Thank you.

MR. FOLDS: First, I would like to address Count 1 for unjust enrichment. I won't go through the elements, but I will note that one of the requirements for the application of unjust enrichment is that services were accepted by the person sought to be charged and were used and enjoyed by him or her. And in this complaint, there's no allegation that the individual defendants used and enjoyed any of the funds that SPGI received from the Air Force under that contract. There's an allegation that funds were commingled between the two corporate entities. There were allegations that SP Global used funds to pay various expenses, but there's no specific allegation that the individual defendants used and benefited from the funds that the Air Force paid to SPGI. What Galois alleges is that SP Global, also a defendant, used the funds to

pay its debts, salaries, and obligations. There's no allegations that any of those funds, any specific funds went to either of the individual defendants.

And then there's an allegation that Tolley and Burns retained the money and used it to unjustly enrich themselves, but there's no allegation that any funds were transferred to Tolley or Burns. Just that they were unjustly enriched by the funds. And that's just reciting the elements of the cause of action. And it's not sufficient to state a claim. There are a number of cases we cited, the *Firestone* case. There's a string cite in the footnote 12 there that lists the many cases in Virginia on this issue.

THE COURT: I'm more concerned about the argument as to SP Global and its unjust enrichment or alleged unjust enrichment.

MR. FOLDS: Well, as to SP Global, the allegation is that funds were commingled and that SP Global used it to satisfy certain with its obligations. So there are more allegations as to SP Global. There's no specific allegation that it used and benefited from them, but I would acknowledge that the plaintiffs have a stronger argument as to SP Global, because we don't think it has any argument as to the individual defendants on this count.

The case cited by the plaintiff, the *Hengle* case, is not persuasive here. It has a very brief -- what is it a

70-page decision and it's got one paragraph of unjust enrichment, and it doesn't address any of these Virginia state court decisions. They just, Well, it went to the company and so we think -- they stated enough on unjust enrichment. We don't think that's sufficient.

THE COURT: You talked about when their evidence or that they owned and operated the company that received the substantial benefit or a substantial portion of the revenues and that seems to be Galois' allegations here.

MR. FOLDS: Okay. Now, what they did not allege -- they would have a stronger argument if they said that the individual defendants guaranteed the obligations of SP Global, and, therefore, by SP Global payments obligations, a benefit was conferred on the individual defendants.

THE COURT: Right. But I'm focusing really just on -- that as it's -- the argument as it's related to SP Global. That because it's -- they say that SP Global took control of the funds and then used those funds to pay its obligations and, therefore, SP Global is the one who benefited.

MR. FOLDS: As I said, there are -- there are stronger allegations as to SP Global than there are to the individual defendants and there is an allegation that SP Global used it to satisfy --

THE COURT: And I'm not saying that -- because right

now, we're only looking at the motion to dismiss stage and we're accepting the allegations as true. I'm not deciding anything on the merits, but just looking at the allegations what's laid out in the complaint, and I agree with you, they do have a stronger case for SP Global.

MR. FOLDS: Okay. I'll move on now to converging, the Count 5, Your Honor. This is the order in which we presented them.

Again, I won't go through the elements, but I'll focus on the one key element that the plaintiff doesn't satisfy. And that is if only a party that has a property interest in and is entitled to the immediate possession of an item can bring an action for conversion.

Now, there's much discussion about whether there can be a conversion claim for money as opposed to goods. I do think there is law in Virginia that support in certain circumstances a conversion claim for specific identifiable funds. And so, we think in some circumstances that can apply, but it doesn't apply here, and I'll tell you why.

Galois had no property interest of any kind in the funds that SPGI received from the Air Force. They had a contract. They had a right to payment under the contract. They didn't have a security interests; they didn't have a UCC filed anywhere. They didn't have an earmarking provision. I note that they did not attach the contract to the complaint.

I suspect that if there was language in the contract that provided an interest in specific identifiable funds, they would have attached it so they could rely on it. What they had was a claim.

THE COURT: And in this case, we have the Air Force making payments to SPGI Institute for over the duration of the contract and there are multiple subcontractors.

MR. FOLDS: That's alleged in the complaint. So we don't think there's any specific -- there's nothing to say they were held in trust. What the plaintiff relies on here is they said, Well, once they got a judgment against SPGI that confirmed that they had a contractual right to the funds. Well, that's true. Once they got a judgment, it showed they had a right to payment and the arbitrator found it and the Court confirmed it. But it doesn't mean they had a right to any specific funds that were converted. There's still nothing to support a property interest in any specific transfer account or anything else. And there are plenty of ways to get that. Either through the UCC, through the contract, or otherwise, and they didn't do it.

The one case upon they replied is Judge Lee's case, *Michigan Mutual*. And that's a case where there is a worker's comp carrier paid the employee, the employee then filed tort claims against the tortfeasor and collected settlement and paid his attorney. And so, the carrier thought it had a

right to those settlement proceeds, a right of subrogation. But it didn't preserve that right properly under the applicable law. It didn't have a right to any specific identifiable funds. And so, its claim was unsuccessful. The same concept applies here under this case that they cited. There was no right to any specific funds.

I'd like to move on, Your Honor, to Count 3 for fraud. And we're focused on the deficiency in the complaint that they have based the claim for fraud on an unfulfilled promise or a statement about something that will happen in the future, because there's no allegation of any specific false statement at the time. Here, it was all, We're going to do this. We're going to transfer money. We're going to -- you know, payments are going to be coming and that sort of thing. So it was a promise to perform or a promise to do something or an expectation, but it's about an event in the future and not a current false statement.

THE COURT: And I agree with you that the complaint talks about future payments, but future payments, those promises can still be a basis if they're fraudulently made that you don't intend to make the payment. Here, the complaint alleges that, you know, that SP Global and Dan Tolley knew that the statements were false.

MR. FOLDS: That's the allegation in there. The case that they cite on this issue, Your Honor, is when a

promise or makes a promise intending not to perform. And in the *Hazaimeh* case versus *U.S. Bank*, the Court found that the plaintiff specifically alleged that the defendant intended to foreclose on the residence whether or not plaintiff made the payment at issue. So it didn't matter what the -- what the plaintiff did, they were still going to do it. And that is the type of allegation, I think, supports that finding or at least the inference that the Court can find. Here, I don't think it is sufficient for the Court to draw that inference, because --

THE COURT: There's not an inference here because they say that they knew that the statements were false, that they made the promise like I'm going to pay -- the payment will be wired, you know, at the end of the week, or the payment will be next week. We're sending a wire. That when they made the statements, and I agree with you they don't include the phrase when the statement was made. But they do say that they knew that the statements were false. I think I could infer from the facts, and just like the pattern of promises, that that's the inference there, that promises that they knew that the statements and the promises were false at the time that they were made.

MR. FOLDS: I would argue that they did not sufficiently allege that the defendants, who they cited, and I want to make one more point on this, had no intention or did

not want to or try to make the payments then.

Because they haven't sufficiently alleged, I don't think, that there was absolutely no intention to make the payment, that they knew it was false, and they knew there was no way it would happen. So I don't think they've reached that now. I know that when the Court raised this question it was in reference to SP Global and to Mr. Tolley. The complaint contains no allegation --

THE COURT: I agree with you.

MR. FOLDS: -- that Mr. Burns made any statements at all to the plaintiff.

And so, clearly, as to Mr. Burns, they have not stated a cause of action for fraud. There's one allegation about the statement that he allegedly made to the Air Force, but not to the plaintiff. And so, the plaintiff could not have relied upon that. There's -- certainly there's nothing in the complaint that supports that.

Now, later on, there's some conclusory allegations as for citing the elements but that's not deficient. So certainly, as to Mr. Burns, it's deficient and we submit it should be dismissed, the count for fraud.

Your Honor, I'd like to move on to tortious interference, which is Count 2. Our position is that the plaintiff has failed to sufficiently allege the causation element. The defendants are officers in SPGI, which is a

party to the contract. And there's no allegation in the complaint that any officer acted outside the scope of its employment. And you can't interfere with your own contract that they were officers of SPGI and they are not a third party that could tortiously interfere with the contract. We think that's straightforward.

In the case of *Wenzel v. Knight*, which we cited in our reply brief, it discusses the implicit requirement in this cause of action of the existence of a third-party interferer who was not a party to the contractual relationship. And we submit that that issue is dispositive. That point is dispositive on the count for tortious interference.

The final count, Your Honor, is the corporate veil/alter ego count, which is Count 4. There are two arguments here. One is that it's not a cause of action to remedy. That's a technical argument, and I will acknowledge that I have not seen the case from March that the plaintiff included in its opposition regarding inability -- a motion to dismiss not being proper on this argument. So I'll withdraw that argument, Your Honor. Because I have not -- I apologize the case was a couple weeks old and I did not have it at the time. I wasn't aware of it. And I think under the circumstances, I'll focus here on the second argument.

And that's simply they failed to allege sufficient facts. This is a big claim to pierce the corporate veil. Of

course, we recognize the corporate entity in Virginia and the distinction of the corporate entity. There's no allegation here that corporate formalities were not recognized. There is a strong presumption in Virginia that the corporation of stockholders are separate and distinct, and this remedy is to be exercised reluctantly and cautiously.

What the plaintiff alleges here is that SPGI was a facade for operations at SP Global, that the entities commingled funds, and that the defendants siphoned funds from SPGI. But there's no allegation about a failure to observe the corporate formality. There's also a recognition that SPGI paid some of its subcontractors and we submit here, even accepting the facts as true, that it's insufficient to make a plausible claim as required in the pleading standard for piercing the corporate veil. Unless the Court has any other questions, I think that's all the points I wanted to make.

THE COURT: I don't.

MR. FOLDS: Thank you, Your Honor.

MS. DUNN: Hi, Your Honor. Lindsey Dunn on behalf of plaintiff, Galois. I'm actually going to start at the end and talk about the alter ego/corporate veil piercing claim because defendants abandoned that argument in reply and did not address the sufficient facts -- whether Galois had alleged sufficient facts in its complaint. And I think that that's because Galois clearly has. There are two -- the most

important allegation goes to the commingling of funds, which is corporate formalities 101. Corporate funds stay within the corporate entity. And Galois has also alleged that the directors and officers of the two organizations, SPG and SPGI, and SPG Institute were the same and had substantial overlap, which is another factor supporting piercing the corporate veil. And there's a specific allegation of the failure to follow a corporate formality for SPG Institute as a nonprofit, which is the annual filing of the IRS form. And that allegation is contained in paragraph 14 of the complaint.

And so, as an initial matter, another argument that was dropped during the reply in support of a motion to dismiss is, uhm, a concession was that a claim for fraud was not pled with particularity. The defendants did not resurrect that argument on reply, and I think it's because paragraphs 34 through 48 of the complaint detail the fraud statements down to the date and direct quotes of the substance of the fraudulent misrepresentations.

And the rest of the motion to dismiss arguments, I'll take in order, starting with unjust enrichment. The main argument here that defendants seem to make is that we, Galois, did not allege that defendants received a benefit. And that's a fundamental misreading of the complaint in which the defendants received the funds. And it is not that -- the benefit here is not the actual contract with the Air Force,

it's the payments that the Air Force made to SPG Institute that were, at some point, commingled with SP Global funds or the rest of the defendant's funds. It's unclear at this time without further discovery and Galois is entitled to their inference --

THE COURT: But as to the individual defendants, even if the funds were commingled and SP Global took some of those funds, what's the benefit to the individual defendants?

MS. DUNN: Well, so, the individual defendants own and operate SP Global, and I think that it's under the *Hengle* case that Your Honor discussed with Mr. Folds that's sufficient to show that the -- the individual defendants that are the officers and directors of SP Global benefited from the funds. And we've alleged in paragraphs 4 and 6 that the individual defendants are officers and directors of both SP Institute and SP Global. And so, under the *Hengle* authority, that means that our claim for unjust enrichment against the individual defendants survive.

THE COURT: The *Hengle* case also cited to another case or tried to distinguish another case from a former judge in this district. It was Judge Lee and that's that *Hyundai* case, and it talked about in that case the unjust enrichment claim was dismissed against the individual defendants because although the company that they worked for did receive a benefit or it could be alleged received a benefit, it

couldn't -- they weren't able to allege that the officers, the individual officers had, in fact, received a benefit. And so, I think it's similar here. Where is the evidence that -- because in the -- your complaint doesn't actually mention any benefit for Mr. Burns. It doesn't identify one.

As to Mr. Tolley, it talks about -- it references a salary that was received back in 2019, but that's not the time of the subaward. And so, but even if -- even if they did receive a salary or were paid a salary, how can we show that that is a benefit that came or how can you allege or where are the facts that you allege that that benefit was received or conferred because of Galois?

MS. DUNN: Certainly, Your Honor. I think the distinction that *Hengle* makes with *Hyundai* is as to the individual defendants really does focus on their ownership and control of the company. And that is the similarity that Galois has to *Hengle* and not to *Hyundai*. And I think that it's true that at this stage there, you know, we cannot show the traceability of funds to the individual defendants, and that is an issue for discovery, but for all reasonable inferences at the motion to dismiss stage, Galois has shown that ownership and that control that *Hengle* focused on for the unjust enrichment claim.

Turning to the claim for conversion. One issue that did not come up in the defense's argument --

THE COURT: I'm sorry. Before we move on from unjust enrichment, because typically when there is a contract and there's been a recovery on a contract, you can't recovery from unjust enrichment as well.

MS. DUNN: Certainly, Your Honor. And I do appreciate that this will probably be a claim that's pled in the alternative to the -- like a breach of contract alter ego.

THE COURT: But you've already recovered on the contract, so to speak, because there's an arbitration award that -- that Galois received because of the breach of the contract.

MS. DUNN: That is correct. But it is effectively unenforceable. Galois cannot collect against it. Multiple creditors of SPG Institute have tried through the writ of attachment process.

THE COURT: But does that impact the fact of the unjust enrichment because you still have a contract award. Even though, as you say, you haven't been able to -- this is a question for -- I think, it wasn't one that neither side addressed in the briefing, but it was a question that I had when I was reviewing your papers that, can there be a recovery here for unjust enrichment when there is a -- because even though that judgment has not been executed or you haven't recovered on it, you still have an award on the breach of the contract.

MS. DUNN: Certainly. And, Your Honor, when we looked into that, our understanding was that because SP Global is a different entity and that we have allegations that funds were transferred from SPG Institute to SP Global that forms a new cause of action. And all the contract does -- the contract claim and award does is establish Galois' right to those funds against SPG Institute. But then really what is in question in this case is the wrongful transfer, the Air Force funds out of SPG Institute.

THE COURT: Okay.

MS. DUNN: And that leads nicely to the conversion claims, which is going after the wrongful transfer of those funds. And so, Counsel is -- seems to attempt to draw a distinction between the right to payment, which defendants concede that Galois has, because of its arbitration award versus what defendants talk about in the briefing, which is an ownership interests in those funds, and that's where defense cited to the *Jones'* case. And in that case, the issue that precluded the plaintiff from getting the funds was that the conditions precedent to the escrow fund disbursement hadn't been satisfied; the plaintiff hadn't sufficiently notified the defendant about its entitlement to the funds, and so it hadn't met the conditions. And so, the Court concluded that the plaintiff could not show a "right to immediate possession of the escrow funds" because she had not properly notified

defendants.

But here, Galois does have the right to the funds and --

THE COURT: How so?

MS. DUNN: Because it has a confirmed arbitration award that establishes its contractual right, and I think that it's really critical here to consider.

THE COURT: But you just -- when did you receive that award?

MS. DUNN: That award was received in fall of 2021. And I think what's critical here --

THE COURT: I'm sorry. One more question. So the award was to be received in the fall of 2021. What is the time period for your conversion claim? And can you show that some funds were transferred out after fall of 2021 then where you would have a right -- because even if you have a right to payment, that's not the same thing as saying that you have a right to the funds, because how can you say that the funds that were in SPGI's Institute bank account at that time were even those same funds that were somehow -- if you, as you've alleged, earmarked for Galois.

MS. DUNN: Certainly. So the complaint is silent as to when the funds were transferred out because we simply don't know without discovery. But I think that what's critical here is that the Air Force contract was for $200,000,000 and that

contract wasn't funded all at once. Like Your Honor said, it was funded in parts and pieces, you know, with progress payments. And so, there were funds that were -- that were -- the request was submitted to the Air Force, the Air Force paid, and it was for work that subcontractors did, and I -- it's impossible to know without discovery.

THE COURT: But don't the funds still belong to SPGI Institute? Even if you have a right to payment, the funds itself belong to SPGI institute.

MS. DUNN: I think that that is true up until the point of either the -- when Galois delivered under the contract and those deliverables were acceptable so it had a contractual right to the payment. Or two, at the point of getting the arbitration award and its -- there is no timeframe for whether the funds were converted before or after that. And so, under, you know, the motion to dismiss or reasonable inference standard, Galois would be entitled to discovery on that fact to let that claim go forward.

THE COURT: All right. I think I understand your argument.

MS. DUNN: Onto the count of fraud. I think that Your Honor asked questions of basically the crux of the argument that I'm about to make, which is that there really was a pattern of promises of performance that supports the Court's reasonable inference as well as Galois' direct

allegation that the defendants knew that the statements were false that constitute fraud. And so, it's not a simple matter of promise of future performance. It's a promise of future performance with the intent not to perform. And the defendants' take issue with a lot of the phrasing of the e-mails that -- which say, SPGI intends to do something or plans to make payment or would -- or payment would be made on the state. And there are allegations of specific promises where SPG Institute says that payments will arrive on this date. It's a definitive statement there was a pattern of promises. It's very clearly false.

And so, they were not intending to do or were making with the intent for Galois to rely on to not -- to, one, continue performing under the contract. And two, once performance was complete, to refrain from bringing an arbitration claim, which is supported by the allegation that SPG Institute actually offered Galois 18 percent interest as almost a concession and a promise to pay if Galois didn't bring this suit.

On the issue of tortious interference, defendants rely on the principle that there must be an interferer or a third party. The defendants say that Burns and Tolley were acting as SPG Institute officers, but that argument ignores two critical facts, which is, one, that SP Global interfered in the contract and SP Global is a third party to the contract

between Galois and SPG Institute. And it also ignores the inability to distinguish whether Burns and Tolley were acting as officers of SPG Institute or SP Global. And so, when defendants rely on the fact that they were acting within the scope of their employment, it's impossible to know which organization they were working on behalf of. And so, if they were acting on behalf of SP Global, then they were acting as third parties to that contract, agents of a third party, to the contract. And --

THE COURT: But even then, wouldn't their conduct be on behalf of SP Global and go towards SP Global's interference with the contract?

MS. DUNN: Correct. But SP Global cannot be held liable for their intentional torts. And so, the cause of action exist independently for Tolley and Burns as if they were acting as agents of SP Global.

THE COURT: But I thought in your complaint you have alleged tortious interference with contract as to SP Global.

MS. DUNN: Yeah. It's against all three, correct.

And, Your Honor, with that, the plaintiff will rest unless you have any further questions.

THE COURT: I do not. Thank you.

MS. DUNN: Thank you.

MR. FOLDS: Your Honor, if I may, I would like to just briefly follow up on a couple of the points they

addressed.

First, as to abandonment, we didn't abandon anything when we didn't address it in our reply. Your Honor, I don't think any Court wants to read every single argument from the primary brief in the reply brief. We stand by the arguments unless I specifically told you otherwise. You don't make every argument every time and I know that neither this Court or any other Court would appreciate it.

There are a couple of instances here where Counsel said that, Well, that's an issue for discovery. We don't know when the transfer was made. That's something for discovery. And in our brief, we noted that in the *Tolman* (ph) case, the Court there -- the Supreme Court, emphasized the discovery is for finding the details of a case, not trying to create a case. And here, the statements that they need discovery in order to try to flush out some of the claims, suggest that the complaint itself was premature because the plaintiff did have a vehicle to find out when this transfer was made before it came to this Court. They have a judgment against SPGI. You can conduct postjudgment discovery. They could have domesticated that judgment from Ohio right here in Virginia in this court. And they could have served that postjudgment discovery, and I'm quite confident this Court would have enforced it and required those answers. They could have found out and they could have gotten that information. They could

have done postjudgment discovery against SP Global, but they didn't. Instead, they came here and they included allegations -- they filed a complaint. We submit, you know, this is an acknowledgment that is premature that they needed more facts before they did it, and they're trying to get over this initial threshold by saying, Well, we need some discovery.

And I don't think that's the way it works and I think that highlights where the complaint itself is deficient.

On the -- so, of course, as to fraud, we did not abandon particularity, we just simply didn't, and I think it's been discussed this morning how certain elements were not sufficient here for fraud, particularly, as to Mr. Burns but we would submit, again as we did before, that these were not -- that there was no present intention not to perform. That it was a statement that these are representations about a future event and there's not sufficient -- they are not sufficient allegations about the intent not to perform in the future.

On unjust enrichment, Your Honor, this is another point where the plaintiff relied on the discovery and they said that, Well, the defendants received the funds was the argument. There's no evidence, the Court pointed out, there's no allegation that either individual defendant received one penny of the funds that -- you know, we don't know when they were transferred, you know, from SP Global to SPGI. It was

not in the complaint nor are the funds that came from the Air Force. There is no specific allegation that the individual defendants did. And the plaintiff said that the benefit is an issue for discovery.

We submit that it's an essential element of the claim and it is an issue for today, and that if they did not plead it in the complaint, then they're deficient on that particular count.

On conversion, that really goes to what I said before, the admission today that the plaintiff does not know when the funds were transferred from SPGI to SP Global is, I submit, fatal to the conversion count altogether, because they have to show that at the time of the transfer they had a present interest. And they've -- now they said, Well, we didn't have any rights at all to specific funds. Their claim for right to specific funds relies on the judgment that came in late 2021. And they haven't alleged that at that time that the funds were transferred after that time. And so, I submit that this count is deficient and should be dismissed. Again, they said it's impossible to know without discovery they could have found out.

And on tortious interference, I do think that the Court recognize the important distinction here that there's no allegation that the individual defendants were acting outside the scope of their employment as to either of the entities.

And if they were acting in their capacity as officers of SP Global, when they received the funds, and then those funds were used to pay obligations of SP Global, where is the allegation that the individual defendants acted outside the scope of their employment or their duties. There's not one.

So again, this is a case where, you know, they have one argument against SP Global, but if that -- with that argument, they don't have the follow-up argument as to individual defendants because they haven't pled it. So unless the Court has other questions, that's all that I wanted to --

THE COURT: Thank you.

As to Count 1, the unjust enrichment claim, I find that -- I do find that the complaint fails to allege specifically that Mr. Burns or Mr. Tolley received any benefit from Galois. As to Mr. Burns, the complaint is completely silent on any potential benefit. And then for Dr. Tolley, it references salaries that were received in 2019 and it says nothing about the time that the subaward was in effect, but even if it did, I find that the receipt of a salary alone is not sufficient to show -- or sufficiently alleges that that benefit were somehow conferred from Galois.

With respect to SP Global, I do find that the complaint has alleged that SP Global benefit from Galois simply by controlling the funds. And that then SP Global used those funds that were intended for Galois to pay its own

debts, to pay salaries to employees, and to satisfy its own obligations. So as to Count 1, I'm going to grant the motion to dismiss as to the individual defendants, Tolley and Burns, but deny it as respect to SP Global.

In terms of the tortious interference with contract, Burns and Tolley were officers of SPGI and -- who was the party to the contract at issue in this case. And they can't interfere -- as agents of SPGI, they can't interfere with their own contract unless they acted outside the scope of their employment. And I find that the complaint simply doesn't allege facts that show that they were acting or, in any way, acted outside the scope of their employment or as agents of SPGI.

For SP Global, it is different because SP Global is a third party. And the complaint alleges that SP Global controlled SPGI Institute's funds under the agreement. And then they intentionally withheld those funds or those payments to Galois. And that that constituted an interference with the contract. And so, the motion to dismiss is granted with respect to defendants Tolley and Burns, but denied as to SP Global.

Now, on the fraud count, both sides acknowledge that fraud must be pled with particularity. And I'm going to take each defendant separately, because as to Defendant Burns, the only allegations in the complaint are that he made a statement

to the Air Force. And that's definitely not pled with any particularity because there's no indication of when that statement was made. We don't know if that statement was made during the time that Galois was even performing on the contract or whether it was made at some later date. There's no indication of the time frame that that statement was made whatsoever.

And even if there was a time frame in there, the statement wasn't made to Galois, it was made based on the allegations of what's in the complaint to the Air Force. And so, there's no factual allegation that could show how -- that they -- that that statement could have been used to defraud Galois. Perhaps some fraud on the Air Force could be alleged, but there could be no fraud against Galois based on this statement that -- that was allegedly made by Mr. Burns to the Air Force.

Now, as to Defendants Tolley and to SP Global, the statements there, a lot of them do go to promises or future events. "The payment will be made." Even saying that the payment will be made on Friday, it's about something in the future. It's about what's going to be happening. But in this case, I think that because, at this stage, I take all factual allegations and inferences, therefore, in the light most favorable to the plaintiff here. And the complaint does allege that at the time that the statements were made that the

defendants knew -- or it doesn't actually say the phrase "when made," but it does say that the defendants knew the statements were false. And the pattern there, along with the statement that the defendants knew that they -- that the statements were false, I think the inference is there is that Defendant Tolley and SP Global knew that the statements were false at the times that they were made. And I do think that that is sufficient to get beyond the motion to dismiss stage.

So I'm going to grant the motion to dismiss with respect to Mr. Burns, but deny it with respect to Defendants Tolley and SP Global.

As to the piercing the corporate veil argument, Count 4, I accept that plaintiffs have withdrawn that one part of their reliance, meaning of being whether or not this is the proper time frame to address this, because it is a remedy and not really a separate claim. And I do think the factual allegations here that have been laid out in the complaint are enough to get beyond this stage. And so, I'm going to deny the motion with respect to Count 4.

And as to the conversion claim, the complaint fails to allege any facts that show that it had a right of possession to specific funds. The funds in the account belonged to SPGI Institute. Plaintiffs simply didn't have an ownership right in here. And based on the concession or the statements here today, it's not even alleged in the complaint,

but what you said here is it's based on the subaward or the arbitration award from the fall of 2021. And so, there's nothing in here, nothing on the complaint, to show that they had any right of possession to the funds that were in SPGI Institute's bank account.

And so, for that reason, I'm going to grant the motion on Count 5.

And so, I note Counsel's exceptions, and I thank you for your quality of your briefs and your advocacy here today. And we're adjourned.

**(Proceedings adjourned at 10:47 a.m.)**

CERTIFICATE OF REPORTER

I, Tonia Harris, an Official Court Reporter for the Eastern District of Virginia, do hereby certify that I reported by machine shorthand, in my official capacity, the proceedings had and testimony adduced upon the Motion hearing in the case of the **GALOIS, INC. versus SP GLOBAL, INC., et al.**, Civil Action No.: 1:22-cv-166, in said court on the 23rd day of May, 2022.

I further certify that the foregoing 30 pages constitute the official transcript of said proceedings, as taken from my machine shorthand notes, my computer realtime display, together with the backup tape recording of said proceedings to the best of my ability.

In witness whereof, I have hereto subscribed my name, this May 23, 2022.

______________________________
Tonia M. Harris, RPR
Official Court Reporter