IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MAY 2 2 2023

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

GALOIS, INC.,                    )
                                 )
                Plaintiff,       )
                                 )
        v.                       )       Civil Action No. 1:22cv0166 (PTG/JFA)
                                 )
SP GLOBAL, INC.,                 )
                                 )
                Defendant.       )
_____)

**PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS**

This matter is before the court on a motion for default judgment filed by plaintiff Galois,

Inc. ("plaintiff") against defendant SP Global Inc. ("defendant"). (Docket no. 74). Pursuant to

28 U.S.C. § 636(b)(1)(C), the undersigned magistrate judge is filing with the court his proposed

findings of fact and recommendations, a copy of which will be provided to all interested parties.

**Procedural Background**

On February 16, 2022, plaintiff filed a complaint against defendant, Dan Tolley, and Tom

Burns asserting claims for unjust enrichment, intentional interference with contractual rights,

fraud, piercing the corporate veil/alter ego, and conversion. (Docket no. 1) ("Compl."). The

Clerk of Court issued summonses for service on defendant on February 22, 2022. (Docket no.

7). On March 2, 2022, plaintiff filed proof of service that stated defendant was served on

February 25, 2022. (Docket no. 10). In accordance with Federal Rule of Civil Procedure 12(a),

a responsive pleading from defendant was due on March 18, 2022.

On March 16, 2022, defendant, along with Burns and Tolley, filed a consent motion to

extend time to respond to complaint. (Docket no. 15). Magistrate Judge Buchanan granted the

1

motion and gave defendant until April 1, 2022 to respond.[1]  (Docket no. 17).  Defendant, Burns, and Tolley filed a motion to dismiss on April 1, 2022.  (Docket no. 18).  On April 28, 2022, District Judge Giles granted in part and denied in part the motion to dismiss.  (Docket no. 25). Judge Giles allowed the claims for unjust enrichment, tortious interference with contract, fraud, and piercing the corporate veil to proceed against defendant, while she dismissed the conversion claim along with various claims against Burns and Tolley.  *Id.*

Defendant and Tolley filed an answer to the complaint on May 12, 2022.  (Docket no. 26).  Following the entry of the scheduling order on July 29, 2022, discovery began.  (Docket no. 28).  On August 31, 2022, upon request of the parties, the case was stayed until November 4, 2022.  (Docket no. 32).  The stay was lifted on November 4, 2022, and the parties were ordered to conclude discovery by February 10, 2023.  (Docket no. 34).  After defendant's counsel moved to withdraw as counsel for defendant, Burns, and Tolley (Docket no. 35), the undersigned granted the request to withdraw on December 16, 2022.  (Docket no. 41).  In the order granting the motion, the undersigned noted that defendant, being a corporation, must be represented by a member of the bar admitted to practice in this court, and the undersigned ordered that substitute counsel enter an appearance on behalf of defendant within fourteen (14) days of entry of the order.  *Id.*  The undersigned noted that failure to do so may result in consequences, such as default being entered against defendant for failure to defend.  *Id.*

On February 3, 2023, plaintiff filed a motion to strike answer and request for entry default.  (Docket no. 48).  The undersigned granted that motion on February 10, 2023 and requested the Clerk enter default against defendant pursuant to Federal Rule of Civil Procedure

---

[1] The case was reassigned from Magistrate Judge Buchanan to the undersigned on August 10, 2022.

55(a).  (Docket no. 57).  The Clerk of Court entered default as to defendant that same day. (Docket no. 58).  Burns and Tolly were ultimately dismissed from the case on April 13, 2023 after plaintiff filed motions to voluntarily dismiss.  (Docket nos. 67, 70, 72–73).

On April 27, 2023, plaintiff filed a motion for default judgment against defendant, a memorandum in support of the motion, a declaration in support of the motion, and a notice of hearing for May 19, 2023.  (Docket nos. 74–77).  Plaintiff certified that it sent the motion, memorandum, declaration, and notice by UPS to Tolley and Burns, as officers of defendant. (Docket nos. 74 at 3; 75 at 22; 76 at 3; 77 at 2).  On May 19, 2023, the motion was called in open court, and plaintiff's counsel appeared before the undersigned.  No one appeared on behalf of defendant.

### Factual Background

The following facts are established by the complaint and memorandum in support of the motion for default judgment.  (Compl.; Docket no. 75).  Plaintiff is an Oregon corporation with its principal place of business in Oregon.  (Compl. ¶ 1).  Defendant is a corporation with a principal place of business in Virginia.  (Compl. ¶ 2).  Tolley operates as the President and Chief Technology Officer of defendant, and he served as Vice President and Treasurer of SPG Institute, Inc.  (Compl. ¶ 4).  Burns is the CEO of defendant and the President of SPG Institute. (Compl. ¶ 6).

### ARCNet Project Award

Around February 2019, the United States Air Force (USAF) awarded SPG Institute a $195 million contract to design, develop, and provide technical support associated with cloud-based technology in support of artificial intelligence advancement sought by the USAF on a platform called the ARCNet Consortium.  (Compl. ¶ 10).  Plaintiff contends that SPG Institute

3

was formed to serve as a vehicle to administer this USAF contract. (Docket no. 75 at 1). Upon

receiving this reward from the USAF, SPG Institute subcontracted with numerous businesses,

including plaintiff. (Compl. ¶ 11).

SPG Institute received at least $11 million in federal funds from the USAF, but it still

owes millions of dollars to numerous contractors. (Compl. ¶¶ 23–24). SPG Institute and/or

defendant paid some of the sub-contractors, but, at some point, they began using the USAF funds

for other purposes, such as paying defendant's debts, salaries, and obligations. (Compl. ¶ 25).

Over time, Tolley caused and allowed SPG Institute to transfer millions of dollars in federal

funds into defendant's accounts and used that money to benefit themselves, not the federal

government or sub-contractors. *Id.*

**Agreement and Non-Payment**

SPG Institute and plaintiff entered into an agreement on July 21, 2020. (Compl. ¶ 26).

Under the agreement, plaintiff was to "perform and deliver a physical design of their

MicroElectronics Challenge project." (Compl. ¶ 27). The agreement provided that SPG Institute

would pay plaintiff $1,789,605.57 in total for the work performed. (Compl. ¶ 28). Plaintiff

invoiced SPG Institute monthly in the amount of actual costs incurred for the full amount of the

contract. (Compl. ¶¶ 29, 31). Plaintiff fully performed under the agreement, submitting all

deliverables as defined in the agreement's statement of work. (Compl. ¶ 32). SPG Institute

accepted the deliverables and never identified any deficiencies in the deliverables. (Compl. ¶

33).

As part of the agreement, SPG Institute agreed to pay invoices within fifteen (15) days

from the receipt of the invoice. (Compl. ¶ 30). On September 15, 2020, SPG Institute informed

plaintiff that it had submitted the first two invoices to "corporate" for payment, confirmed

plaintiff's address, and noted their surprise that plaintiff had not received the first check yet. (Compl. ¶ 34). Plaintiff claims that when SPG Institute referred to "corporate," it meant defendant. (Compl. ¶ 35). Plaintiff never received any checks from SPG Institute or defendant. (Compl. ¶ 36). On September 30, 2020, an SPG Institute employee promised to reach out to "corporate" again about the payments. (Compl. ¶ 37). That employee informed plaintiff a week later that defendant would be paying the outstanding invoices through ACH wire transfer. (Compl. ¶ 38). When plaintiff checked on the status of the payments a week after that, the employee stated that the request had again been sent to "corporate," but "corporate" had not confirmed that the payment would be wired. (Compl. ¶ 39). Later that day, Tolley promised plaintiff that it should be paid that week. (Compl. ¶ 40).

Plaintiff alleges it continued to not receive any payment for the deliverables. Plaintiff claims it had phone conversations with Tolley where he, on behalf of SPG Institute and/or defendant, offered to pay eighteen percent (18%) APR due to the delays in the payment. (Compl. ¶ 42). Tolley later confirmed plaintiff's understanding and expressed his appreciation for plaintiff's willingness to work with them on the payment. (Compl. ¶ 43). Plaintiff continued following up with Tolley, but plaintiff was still never paid. (Compl. ¶¶ 44–48). In December 2020, Tolley blamed SPG Institute's and/or defendant's accounting system as the reason why plaintiff had not been paid. (Compl. ¶ 47).

**SPG Institute's Relationship with Defendant**

SPG Institute is a registered 501(c)(3) organization. (Compl. ¶ 9). Plaintiff alleges that SPG Institute is owned and controlled by defendant, Tolley, and Burns. (Compl. ¶ 12). Plaintiff also claims that defendant, Tolley, and Burns were controlling all of the payments on behalf of SPG Institute and that defendant and SPG Institute's funds were co-mingled. (Compl. ¶¶ 19,

22).  Plaintiff alleges that when it asked SPG Institute about the status of past due invoices, an employee of SPG Institute responded that "all payments are handled by corporate, but I will forward this email to Dan Tolley the President of SP Global, Inc as he would be the individual who would be in the best position to answer." (Compl. ¶ 15).  Plaintiff claims Tolley would use his SP Global email address with a signature block identifying himself as President of defendant when emailing with plaintiff.  (Compl. ¶ 16).  At one point, Tolley informed plaintiff that defendant was having issues involving their accounting system, which was causing them to freeze the account and bring in cash to cover all the needs, including the ARCNet fees.  (Compl. ¶ 20).  Burns informed the USAF that they were in the process of transferring funds to make payments that SPG Institute owed to subcontractors. (Compl. ¶ 21).

**Arbitration**

On June 16, 2021, an arbitrator issued a final arbitration award against SPG Institute in favor of plaintiff in the amount of $1,789,605.57 for the full amount unpaid to plaintiff, $201,238.24 in pre-judgment interest, $25,000 in attorneys' fees and costs, and post-judgment interest to accrue at eighteen percent (18%) per annum from the date of the award.  (Compl. ¶ 49).  The Court of Common Pleas in Montgomery County, Ohio confirmed the arbitration award on September 13, 2021.  (Compl. ¶ 50).  SPG Institute has not satisfied the judgment against it. (Compl. ¶ 51).  Based on efforts to garnish SPG Institute's bank accounts, SPG Institute does not have funds to satisfy plaintiff's judgment against it.  (Compl. ¶ 52).

## **Proposed Findings and Recommendations**

Federal Rule of Civil Procedure 55(a) authorizes the entry of a default when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend."  Based on defendant's answer being stricken and the failure of defendant to comply

with a court order and have substitute counsel notice an appearance, the Clerk of Court has

entered a default as to defendant. (Docket no. 58).

A defendant in default admits the factual allegations in the complaint. *See* Fed. R. Civ. P.

8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a

responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp.*

*v. Globalsantage.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts

alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as

alleged state a claim."). Federal Rule of Civil Procedure 55(b)(2) provides that a court may

conduct a hearing to determine the amount of damages, establish the truth of any allegation by

evidence, or investigate any other matter.

## Jurisdiction and Venue

A court must have subject matter jurisdiction over a claim, personal jurisdiction over a

defaulting party, and venue must be proper before it can render a default judgment. Diversity

jurisdiction exists when the controversy is between citizens of different states and the amount in

controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). Here, plaintiff is a citizen of Oregon.

(Compl. ¶ 1). Defendant is a citizen of Virginia. (Compl. ¶¶ 2, 8). The amount in controversy

exceeds $75,000, as plaintiff is seeking damages in excess of $2,000,000. (Docket no. 74-1).

This court also has personal jurisdiction over defendant. As stated in the complaint,

defendant has its principal place of business in Virginia. (Compl. ¶ 2). As defendant is "at

home" in the forum, there is general personal jurisdiction. *See Symbology Innovations, LLC v.*

*Lego Systems, Inc.*, 282 F. Supp. 3d 916, 936 (E.D. Va. 2017) (noting that general personal

jurisdiction exists where a defendant has affiliations with the state that are so "continuous and

systematic" as to render defendant essentially at home in the state, such as a corporation's place of incorporation or principal place of business).

Venue is proper in this court pursuant to 28 U.S.C. § 1391.  Under 28 U.S.C. § 1391(b)(1), venue is proper in any district in which any defendant resides if all defendants are residents of the state in which the district is located.  For purpose of venue, a corporation resides in any judicial district which such corporation is subject to the court's personal jurisdiction with respect to the civil action in question.  28 U.S.C. § 1391(c).  Because this court has personal jurisdiction over defendant, defendant resides in this district.  Therefore, venue is proper.

For these reasons, the undersigned recommends a finding that this court has subject matter jurisdiction over this action, that this court has personal jurisdiction over defendant, and that venue is proper in this court.

## Service

Federal Rule of Civil Procedure 4(h)(1)(A) allows for service on a corporation in accordance with state law in the state where the district court is located or where service is made. Under VA. CODE ANN. § 8.01-299(3) (2018), if the address of the registered office of a corporation is a single-family residential dwelling, substituted service on the registered agent of the corporation can be effect in the manner provided by VA. CODE ANN. § 8.01-296(2) (2019). Under that section, substituted service may be made on a party, if the party is not found at his usual place of abode, by delivering a copy of the process and giving information of its purport to any person found there, who is a member of his family, other than a temporary guest, and who is of the age of sixteen (16) years or older.  VA. CODE ANN. § 8.01-296(2)(a).

On February 25, 2022, Abel Emiru, a private process server, served the summons and complaint on Diane Tolley, Dan Tolley's wife.  (Docket no. 10).  The affidavit of service states

that the registered address of the corporation is a single-family residential dwelling and Diane

Tolley is a person of suitable age and discretion residing therein. *Id.* Additionally, defendant

obviously had notice of this action since it initially retained counsel and filed a motion to dismiss

in which it did not contest service in this matter. (Docket nos. 14, 18). Based on the foregoing,

the undersigned recommends a finding that defendant was properly served with the summons

and complaint and had notice of this action.

### Grounds for Entry of Default

On December 16, 2022, the undersigned granted the motion to withdraw as attorney and

warned defendant that, as a corporation, failure to have substitute counsel enter an appearance on

behalf of defendant within fourteen (14) days of the order could result in consequences, such as

default being entered against defendant for failure to defend. (Docket no. 41). After no

substitute counsel entered an appearance on behalf of defendant, plaintiff filed a motion to strike

the answer and request for entry of default on February 3, 2023. (Docket no. 48). On February

10, 2023, the undersigned granted the motion and requested the Clerk enter default against

defendant pursuant to Federal Rule of Civil Procedure 55(a). (Docket no. 57). The Clerk

entered default as to defendant the same day. (Docket no. 58). On April 27, 2023, plaintiff filed

a motion for default, memorandum in support, a declaration in support, and notice of hearing for

Friday, May 19, 2023, at 10:00 a.m. (Docket nos. 74–77). Each of these pleadings indicate they

were sent to Tolley and Burns, as officers of defendant, by UPS. (Docket nos. 74 at 3; 75 at 22;

76 at 3; 77 at 2). Defendant has not filed an opposition to the entry of default or the motion for

default judgment, and no substitute counsel has noticed an appearance for defendant.

Accordingly, the undersigned recommends a finding that the Clerk of Court properly

entered default as to defendant and that defendant had notice of these proceedings.

## Liability

According to Federal Rule of Civil Procedure 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Given that a default has been entered, the factual allegations in the complaint are deemed admitted. *See* Fed. R. Civ. P. 8(b)(6). Plaintiff seeks compensatory damages, pre-judgment interest, post-judgment interest, attorneys' fees, and costs. (Docket no. 74-1). The undersigned will apply Virginia law to the claims, as the parties both conceded that Virginia law governs these claims when they cited to Virginia law in the motion to dismiss, opposition, and reply. (Docket nos. 18, 21, 23).

**Piercing Corporate Veil/Alter Ego**

Plaintiff brings a claim alleging that defendant should be responsible for the damages awarded against SPG Institute under the theory of piercing the corporate veil/alter ego. (Compl. ¶¶ 70–78). Virginia courts have consistently held that "a corporation is a legal entity entirely separate and distinct from the shareholders or members who compose it." *Cheatle v. Rudd's Swimming Pool Supply Co., Inc.*, 234 Va. 207, 212 (1987). A decision to pierce the corporate veil "constitutes 'an extraordinary exception' to be permitted only when it becomes necessary to promote justice." *Id.* (citing *Beale v. Kappa Alpha Order*, 192 Va. 382, 397 (1951)). "There is no single rule or criterion that can be applied to determine whether piercing the corporate veil is justified." *O'Hazza v. Exec. Credit Corp.*, 246 Va. 111, 115 (1993). As the party seeking to pierce the corporate veil bears the burden of proof, "plaintiff must show that the corporate entity was the *alter ego*, alias, stooge, or dummy of the individuals sought to be charged personally and that the corporation was a device or sham used to disguise wrongs, obscure fraud, or conceal crime." *Cheatle*, 234 Va. at 212 (citing *Lewis Trucking Corp. v. Commonwealth*, 207 Va. 23, 31 (1966)). This can be done by showing "(i) 'a unity of interest and ownership' between

10

[defendant and the corporation] and (ii) that [defendant] 'used the corporation to evade a personal obligation, to perpetrate fraud or a crime, to commit an injustice, or to gain an unfair advantage.'" *C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 306 F.3d 126, 131–32 (4th Cir. 2002) (quoting *C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 140 F. Supp. 2d 628, 643 (E.D. Va. 2001)).

However, Virginia cases deal with piercing the corporate veil for for-profit corporations and partnerships. SPG Institute is registered as a 501(c)(3) not-for-profit corporation, and it has no shareholders as a nonstock corporation. (Compl. ¶ 9). However, the doctrine of piercing the corporate veil is found in equity and exists to prevent injustice. *Steyhr Daimler Puch of Am. Corp. v. Pappas*, 35 B.R. 1001 (E.D. Va. 1983) (quoting *Aetna Cas. & Surety Co. v. Stover*, 327 F.2d 288, 291 (8th Cir. 1964)). "The mere fact that a corporation is a nonprofit corporation does not by itself preclude the court from applying the equitable remedy of piercing the corporate veil." 1 FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 41.75 (2022). Justice would not be served if the court were to allow one who uses a non-profit corporation as an alter ego to avoid recovery against it simply due to the status of the non-profit corporation and lack of shareholders. This conclusion is supported in numerous other jurisdictions. *See HOK Sport, Inc. v. FC Des Moines, L.C.*, 495 F.3d 927, 938–39 (8th Cir. 2007); *Loving Saviour Church v. United States*, 556 F. Supp. 688, 691 (D.S.D. 1983), *aff'd* 728 F.2d 1085, 1086 (8th Cir. 1984); *United States v. Emor*, 850 F. Supp. 2d 176, 206 (D.D.C. 2012); *United States ex rel. Wright v. Cleo Wallace Ctrs.*, 132 F. Supp. 2d 913, 929 (D. Colo. 2000); *United States v. Kitsos*, 770 F. Supp. 1230, 1236–37 (N.D. Ill. 1991); *Pub. Interest Bounty Hunters v. Bd. of Fed. Reserve Sys.*, 548 F. Supp. 157, 162 (N.D. Ga. 1982); *Medlock v. Medlock*, 263 Neb. 666, 679–80 (2002); *Barineau v. Barineau*, 662 So.2d 1008, 1009 (Fla. Dist. Ct. App. 1995). Therefore, SPG Institute's status as a 501(c)(3) does not preclude its corporate veil from being pierced.

First, plaintiff must prove a unity of interest between defendant and SPG Institute. Among the factors the court should consider in the unity of interest analysis is (i) the comingling of personal and corporate funds, (ii) the siphoning business assets into personal pockets, (iii) the undercapitalization of the business, and (iv) whether business formalities were observed. *C.F. Trust*, 140 F. Supp. 2d at 643 (citing *Cheatle*, 234 Va. at 212). Here, all four factors favor a finding of unity of interest.

First, there was a significant amount of comingling of funds between defendant and SPG Institute and siphoning of business assets into defendant's accounts. Even though plaintiff's contract was with SPG Institute, messages from employees, Tolley, and Burns to plaintiff indicate that the transfer of funds would come from defendant and would need to be approved by defendant. (Compl. ¶¶ 15, 17–18, 21, 34, 37–39, 42). Tolley also used defendant's accounting system issues as an excuse for not paying plaintiff, which indicates that funds that were originally sent to SPG Institute by the USAF were subsequently either moved to defendant or that defendant and SPG Institute had joint control over the account. (Compl. ¶¶ 20, 47). Defendant used the money it received from the USAF to pay its debts, salaries, and obligations rather than subcontractors. (Compl. ¶ 25).

Furthermore, SPG Institute was undercapitalized and business formalities were not observed. Undercapitalization need not be in place throughout the entire relevant period, as a transfer of funds can result in the undercapitalization of a corporation. *See DiMuroGinsberg, P.C. v. VLOX, LLC*, 2019 WL 3728254, at *9 (E.D. Va. Aug. 7, 2019) ("Wardak transferred $2 million from the Base Year settlement from VLOX to himself without paying any consideration and was aware that this transfer would result in VLOX's undercapitalization and lack of funds to pay its then-creditors."). While there may have been times during the relevant period that SPG

Institute was appropriately capitalized, the transfer of funds to defendant for it to use these funds to pay defendant's debts, salaries, and obligations resulted in the undercapitalization of SPG Institute. (Compl. ¶¶ 25, 52). As a result, plaintiff has not been able to recover on its judgment against SPG Institute. (Compl. ¶¶ 51–52). The lack of observation of corporate formalities is evidenced by SPG Institute, which was created for the purpose of coordinating the ARCNet project, freely transferring money to defendant, defendant being responsible for paying SPG Institute's creditors, officers of SPG Institute seemingly acting on behalf of both SPG Institute and defendant at the same time, and the failure to file proper IRS forms. (Compl. ¶¶ 14, 16, 19, 21–25, 34, 39–40, 45).

Second, plaintiff must prove that defendant used SPG Institute to perpetrate fraud, commit an injustice, or to gain an unfair advantage. SPG Institute received millions of dollars that came in from the USAF for the ARCNet project, transferred a significant portion of the money to defendant in an attempt to evade its obligations to the sub-contractors including plaintiff, and defendant used those funds to pay for its debts, salaries, and obligations. (Compl. ¶¶ 25, 52). These actions are sufficient to satisfy this prong of the analysis. *See C.F. Trust*, 140 F. Supp. 2d at 644 ("Given this control and unity of interest with First Flight, Barrie Peterson was able to evade his obligation to his creditors by directing the transfer of millions of dollars out of First Flight to Scott Peterson and to BHG for the payment of his personal expenses.").

Accordingly, the undersigned recommends a finding that plaintiff can pierce the corporate veil of SPG Institute and hold defendant liable for judgments against SPG Institute.

**Fraud**

Plaintiff also brings a claim alleging fraud by defendant based on false statements made by defendant, through Tolley and Burns, which resulted in plaintiff completing its work under

the agreement in reliance of false representations.  (Compl. ¶¶ 62–69).  Fraud requires proof by

clear and convincing evidence: (1) a false representation, (2) of material fact, (3) made

intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6)

resulting damage to the party misled. *Evaluation Research Corp. v. Alequin*, 247 Va. 143, 148

(1994) (citations omitted).  As a general rule, fraud must relate to a present or pre-existing fact.

*McMillion v. Dryvit Systems, Inc.*, 262 Va. 463, 471 (2001) (quoting *Patrick v. Summers*, 235

Va. 452, 454 (1988)).  However, "an exception applies for fraud predicated on promises made

without a present intention to perform them or on promises made with no intention to perform

them.  The exception is based on the promisor's fraudulent intent or state of mind which is a

matter of present fact." *A.G. Van Metre Const., Inc. v. NVKettler L.P.*, 1992 WL 884467, at *2

(Va. Cir. Ct. Jan. 29, 1992).

   Here, defendant, through its officers Tolley and Burns, made multiple false

representations regarding future events.[2]  At one point, Tolley informed plaintiff that defendant

would bring in cash that week and plaintiff would be paid the following week.  (Compl. ¶ 20).

On October 20, 2020, Tolley informed plaintiff that it should be paid by wire by that Friday.

(Compl. ¶ 40).  In early November, Tolley promised that the money would be wired by the

following week.  (Compl. ¶ 42).  On December 3, 2020, Tolley stated they planned to wire the

money to plaintiff the next Friday.  (Compl. ¶ 45).  The next day, Tolley stated that plaintiff

would get paid on Tuesday or Wednesday. *Id.*  Later in December, Tolley once again stated that

plaintiff would be paid the following week.  (Compl. ¶ 47).  Defendant knew these statements

were false and made the statements with the intention to mislead plaintiff into continuing to

---

[2] While plaintiff cites to numerous statements in the memorandum in support of the
motion for default judgment (Docket no. 75 at 11–12), it is only the statements that can be
attributed to defendant that can be considered as representations by defendant.

complete its work under the agreement and deter plaintiff from taking steps to collect amount due or otherwise mitigate its losses.  (Compl. ¶¶ 65–66).  As District Judge Giles noted at the hearing on the motion to dismiss, while the complaint does not explicitly state that defendant knew the statements were false "when made," there is the inference that defendant knew that the statements were false at the time they were made.  (Docket no. 27 at 28).

These statements are material, plaintiff relied on them, and plaintiff suffered damages due to them.  As evidenced by the invoices submitted by plaintiff to SPG Institute, plaintiff continued work and incurred costs under the agreement through November 2020 despite not being paid by defendant based on the representations that payments would be made to plaintiff.  (Compl. ¶¶ 29, 31).

Accordingly, the undersigned recommends a finding that defendant is liable for fraud.[3]

## Relief

In motion for default judgment, plaintiff seeks a judgment against defendant in the amount of: (1) $1,789,605.57 in compensatory damages; (2) $201,238.24 in pre-judgment interest as provided in the arbitration award; (3) post-judgment interest at the rate of eighteen percent (18%) per year from June 16, 2021, the date of the arbitration award; (4) $163,961.75 in attorneys' fees; and (5) $1,371.46 in costs.  (Docket no. 74-1).  Unlike liability, allegations concerning damages are not admitted upon default.  *See* Fed. R. Civ. P. 8(b)(6); *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).  Instead, the court "must make an independent determination regarding damages." *Wilcox v. Transmodal Solutions, LLC*, 473 F. Supp. 3d 574, 584 (E.D. Va. 2020) (citation and quotation marks omitted).

---

[3] Given these recommendations, the undersigned need not address liability for unjust enrichment or intentional interference with contractual rights.

**Damages and Interest**

On June 16, 2021, an arbitrator issued the final arbitration award against SPG Institute, which was confirmed by the Court of Common Pleas in Montgomery County, Ohio on September 13, 2021, for (1) $1,789,605.57 in the amount unpaid to plaintiff; (2) $201,238.24 in prejudgment interest to plaintiff; (3) $25,000 in attorneys' fees and costs, and (4) post-judgment interest to accrue at eighteen percent (18%) per annum from the date of the award.  (Compl. ¶¶ 49–50).  With SPG Institute having been found to be the alter ego of defendant, the undersigned recommends defendant be held liable for this judgment, minus the attorneys' fees and costs.[4]

**Attorneys' Fees and Costs**

Plaintiff does seek attorneys' fees and costs from this action.  In plaintiff's memorandum in support of the motion for default judgment, plaintiff states that it had incurred $163,961.75 in attorneys' fees and $1,371.46 in costs pursuing this action.  (Docket no. 75 at 20).  Plaintiff provided a detailed, itemized account of the fees and costs.  (Docket nos. 76-2; 76-3).

"Under the so-called 'American rule', a prevailing party generally cannot recover attorneys' fees from the losing party." *Ulloa v. QSP, Inc.*, 271 Va. 72, 81 (2006) (citing *Lee v. Mulford*, 269 Va. 562, 565 (2005)).  The Virginia Supreme Court has recognized an exception to this general rule, in that the court may award attorneys' fees to a defrauded party.  *Prospect Dev. Co., Inc. v. Bershader*, 258 Va. 75, 92 (1999).  Under the facts of this case as discussed above, the undersigned recommends that the award of reasonable attorneys' fees and cost would be appropriate.

---

[4] Plaintiff has not requested that defendant also be held liable for the $25,000 in attorneys' fees and costs from the arbitration.

In calculating attorneys' fees, "a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009) (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008)).  The Fourth Circuit provides twelve factors in determining the reasonable number of hours and rate:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)).

Furthermore, this court has employed the *Vienna Metro* matrix in determining reasonable rates for attorneys' fees in the northern Virginia area. *See Vienna Metro LLC v. Pulte Home Corp.*, 2011 WL 13369780, at *6 (E.D. Va. Aug. 24, 2011); *Gomez v. Seoul Gool Dae Gee Inc.*, 434 F. Supp. 3d 381, 385–86 (E.D. Va. 2020).  The matrix's hourly rate calculation accounts for some of the *Robinson* factors including (3) skill required, (5) customary fee, (9) the experience, reputation, and ability of the attorney, and (12) fee awards in similar cases by providing a stable and consistent rate for northern Virginia attorneys based on their skill in commercial litigation cases and years of experience. *Gomez*, 434 F. Supp. 3d at 385 (quoting *Entegee, Inc. v. Metters Industries, Inc.*, 2018 WL 3472819, at *3 (E.D. Va. July 19, 2018)).  In *Vienna Metro*, the court found the following reasonable hourly rates in the northern Virginia area:

| Paralegal | 1–3 years of experience | 4–7 years of experience | 8–10 years of experience | 11–19 years of experience | 20+ years of experience |
|---|---|---|---|---|---|
| $130–350 | $250–435 | $350–600 | $465–640 | $520–770 | $505–820 |

*Vienna Metro*, 2011 WL 13369780, at *6. Despite the rates being designated in 2011, this court has still used the rates as a baseline for reasonable hourly rates. *See GW Acquisition Co., LLC v. Pageland Limited Liability Co.*, 2023 WL 3294123, at *7 (E.D. Va. May 5, 2023). Separately, the Federal Rules of Civil Procedure provide that the prevailing party is entitled to an award of costs incurred unless a federal statute, the Federal Rules of Civil Procedure, or a court order provides otherwise. Fed. R. Civ. P. 54(d)(1).

The undersigned has reviewed plaintiff's attorneys' fees and costs as provided (Docket nos. 76-1; 76-2), and, having considered the factors laid out by the Fourth Circuit in *Robinson* and the *Vienna Metro* matrix, recommends a finding that the hourly rates requested for plaintiff's attorneys are excessive. Earlier this month, District Judge Brinkema reviewed a fee request in a matter significantly more complicated than this case, recognized the applicability of the *Vienna Metro* matrix, and awarded fees in the mid-range of the matrix ($710 for a senior partner, $490 for a junior partner, $415 for a senior associate, and $300 for a junior associate). *GW Acquisition*, 2023 WL 3294123, at *7. The declaration from John K. Roche states that the requested rates "fall within the prevailing rates for large law firms," but it does not address the prevailing rates in the northern Virginia area. (Docket no. 76 ¶ 2). Requesting an award of $1,140 per hour for a partner and $850 per hour for an associate for this matter is excessive. Nevertheless, the undersigned will calculate the amount based on the top-end of the *Vienna Metro* matrix or the rate charged, whichever is lower. The following hourly rates will be used to calculate the loadstar amount:

| Name | Experience | Hourly Rate (2022) | Hourly Rate (2023) | *Vienna Matrix* Top-End Rate |
|---|---|---|---|---|
| John Roche | 19 years | $990 | $1,140 | **$770** |
| Erick Haynie | 20+ years | **$685** | $895 | **$820** |
| Lindsey Dunn | 8 years | $680 | $930 | **$640** |
| Ariel Glickman | 6 years | $730 | $850 | **$600** |
| Patricia Dean | Paralegal | N/A | $490 | **$350** |
| Juliette Hopkins | Paralegal | N/A | $360 | **$350** |
| George Auslander | Paralegal | **$315** | N/A | $350 |
| Hanna Mullin | Paralegal | **$250** | **$310** | $350 |

Furthermore, the hours billed should not include those incurred as a result of actions taken exclusively to progress and resolve the claims against Tolley and/or Burns.  These entries are exclusively related to those dismissed defendants and must be deleted from any award.

The loadstar amount based on the above hourly rates and without the hours spent exclusively on Tolley and Burns are:

| Name | Rate (2022) | Hours (2022) | Fees (2022) | Rate (2023) | Hours (2022) | Fees (2023) |
|---|---|---|---|---|---|---|
| John Roche | $770 | 22.7 | $17,479.00 | $770 | 13.2 | $10,164.00 |
| Erick Haynie | $685 | 9.4 | $6,405.00 | $820 | 1.4 | $1,148.00 |
| Lindsey Dunn | $640 | 25 | $16,000.00 | $640 | 7.1 | $4,544.00 |
| Ariel Glickman | $600 | 15.3 | $9,180.00 | $600 | 61.5 | $36,900.00 |
| Patricia Dean | N/A | N/A | N/A | $350 | 1.1 | $385.00 |
| Juliette Hopkins | N/A | N/A | N/A | $350 | .7 | $245.00 |
| George Auslander | $315 | 3.3 | $1,039.50 | N/A | N/A | N/A |
| Hanna Mullin | $250 | 1.0 | $250 | $310 | .4 | $124.00 |

These fees total to $103,863.25.  This amount does not take into account the substantial parts of the other recorded time dealing with issues related to the dismissed defendants and in opposing the motion to dismiss that was largely successful for the individual defendants and the conversation claim.  Given the inability to determine the exact number of these unrecoverable hours, the undersigned recommends a twenty percent (20%) reduction in fees.

Accordingly, the undersigned recommends a finding that plaintiff be awarded $83,090.60 in fees and $1,371.46 in costs.

## Conclusion

For these reasons, the undersigned recommends that judgment be entered in favor of plaintiff Galois, Inc. against defendant SP Global, Inc. in the amount of $1,990,843.24 ($1,789,605.57 in compensatory damages + $201,238.24 in pre-judgment interest through the date of the arbitration) with interest accruing at eighteen percent (18%) per annum in post-judgment interest from June 16, 2021 until paid, plus $83,090.60 in attorneys' fees and $1,371.46 in costs.[5]

## Notice

By means of the court's electronic filing system and by mailing a copy of this proposed findings of fact and recommendations to Tom Burns at 8849 Brown Thrasher Court, Gainesville, VA 20155; Dan Tolley at 16545 Chestnut Overlook Drive, Purcellville, VA 20132; and SP Global, Inc. c/o Registered Agent, 16545 Chestnut Overlook Drive, Purcellville, VA 20132, the parties are notified that objections to this proposed findings of fact and recommendations must be filed within fourteen (14) days of service of this proposed findings of fact and

---

[5] Plaintiff has not provided any information to the court concerning the terms on which defendant Burns and Tolley were dismissed from this action.  SP Global, Inc. may be entitled to an offset of any amount plaintiff has received from those defendants.

recommendations and a failure to file timely objections waives appellate review of the substance

of the proposed findings of fact and recommendations and waives appellate review of any

judgment or decision based on this proposed findings of fact and recommendations.

    ENTERED this 22nd day of May, 2023.

                                   /s/
                                John F. Anderson
                                United States Magistrate Judge

                                John F. Anderson
                                United States Magistrate Judge

Alexandria, Virginia